UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CYNTHIA LEAHY-FERNANDEZ,

      Plaintiff,

v.                       Case No. 8:15-cv-2380-T-33TGW


BAYVIEW LOAN SERVICING, LLC,

      Defendant.
_____/

**ORDER**

This cause comes before the Court upon Defendant Bayview Loan Servicing, LLC's Motion to Dismiss filed on December 4, 2015 (Doc. # 19). Plaintiff Cynthia Leahy-Fernandez filed a response on January 20, 2016. (Doc. # 29). The Court grants in part and denies in part the Motion for the reasons below.

**I.   Background**

Bayview is a loan servicing company, and was the servicer of a mortgage securing a promissory note (the Debt) on real property owned by Leahy-Fernandez. (Doc. # 1 at ¶¶ 33-34). When Bayview began servicing Leahy-Fernandez's Debt, she was already in default. (Id. at ¶ 34).

On July 15, 2008, Leahy-Fernandez filed for Chapter 13 bankruptcy; Leahy-Fernandez listed her Debt that was serviced by Bayview in her bankruptcy schedules. (Id. at ¶ 35). On

1

March 13, 2013, Leahy-Fernandez's bankruptcy counsel sent Bayview a letter stating that the Debt was surrendered and listed in Leahy-Fernandez's Chapter 13 bankruptcy. (Id. at ¶ 39). And on August 16, 2013, Leahy-Fernandez successfully completed her Chapter 13 plan and the Debt was discharged. (Id. at ¶ 37). Nevertheless, Bayview allegedly continued to attempt to collect the Debt by sending billing statements each month that indicated Leahy-Fernandez was past due in her payments. (Id. at ¶¶ 38, 41-42).

On March 3, 2015, Leahy-Fernandez's bankruptcy counsel sent another letter informing Bayview that Leahy-Fernandez had received a discharge in bankruptcy. (Id. at ¶ 48). The March 3, 2015, letter also instructed Bayview to cease communications with Leahy-Fernandez. (Id.). Yet, Bayview allegedly continued to send Leahy-Fernandez billing statements. (Id. at ¶ 49).

On December 8, 2015, Leahy-Fernandez filed the instant Complaint. (Doc. # 1). The Complaint brings three counts: violation of the Florida Consumer Collections Practices Act, Section 559.55 et seq., Florida Statutes (FCCPA) (Count I); violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962 et seq. (FDCPA) (Count II); and seeks injunctive relief and monetary sanctions for discharge injunction violations

(Count III). (Id.). Specifically as to the FCCPA Count, Leahy-Fernandez alleges Bayview violated Sections 559.72(7), (9), and (18). (Id. at ¶ 59). And as for the FDCPA Count, Leahy-Fernandez alleges Bayview violated Sections 1692c, 1692d, 1692e, and 1692f. (Id. at ¶ 67). Bayview filed the pending Motion to Dismiss on December 4, 2015.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) (stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

3

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002). A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (internal citation omitted).

## III. **Analysis**

### A. **Implied Repeal and Preemption**

The current version of the Bankruptcy Code's discharge injunction, 11 U.S.C. § 524(a), was enacted in 1978. See Pub. L. No. 95-958, 92 Stat. 2549, 2592 (1978). The provisions of the FDCPA under which Leahy-Fernandez brings suit were enacted in 1977, and Section 1692e was amended in 1996. Pub. L. No. 95-109, 91 Stat. 876, 877, 879 (1977); Pub. L. No. 104-208 § 2305(a), 110 Stat. 3009-425 (1996). Bayview argues the Bankruptcy Code impliedly repealed the FDCPA and preempts

4

the FCCPA. Bayview further argues the Truth in Lending Act, 15 U.S.C. § 1601, et seq., (TILA), and the related Regulation Z, which was amended in 2013, 78 Fed. Reg. 205, 63001 (Oct. 23, 2013), precludes Leahy-Fernandez's FDCPA claim and preempts her FCCPA claim.

### 1.   The Federal Statutes

"While a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision . . ., repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest." Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 662 (2007) (internal quotation marks and citations omitted). A court "will not infer a statutory repeal unless the later statute expressly contradict[s] the original act or unless such a construction is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all." Id. (internal quotation marks and citations omitted) (alterations, except second, in original).

To find that a statute has been impliedly repealed, a court must first find a clear and manifest intent to repeal. Rodriguez v. United States, 480 U.S. 522, 524 (1987). A clear and manifest intent may be inferred from the existence of an

irreconcilable conflict. Id. An irreconcilable conflict exists between two statutes when there is a "positive repugnancy between them or . . . they cannot mutually coexist." Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976). A court "must 'assiduously attempt' to construe two statutes in harmony before concluding that one impliedly repeals the other." Ray v. Spirit Airlines, Inc., 767 F.3d 1220, 1225 (11th Cir. 2014). "[R]epeal by implication is a rare bird indeed." Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004).

### a.   The FDCPA and the Bankruptcy Code

Bayview argues in part, "[t]his Court should follow [Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506 (9th Cir. 2002),] because it is the only circuit decision similarly addressing a FDCPA claim based on post-discharge activities involving a secured debt that survived the discharge." (Doc. # 19 at 10). However, since Bayview filed its Motion, the Second Circuit handed down its decision in Garfield v. Ocwen Loan Servicing, LLC, No. 15-527, 2016 WL 26631 (2d Cir. 2016).

In Garfield, a Chapter 13 debtor received a discharge of her personal obligation for her mortgage loan. Id. at *1. After the discharge, the debtor brought suit in district court alleging that, post-discharge, the defendant-loan servicer

6

violated provisions of the FDCPA. Id. The Second Circuit held that the debtor could bring a FDCPA action because the Bankruptcy Code did not impliedly repeal the FDCPA. Id. at *2-5.

In so holding, the Second Circuit made a key distinction between claims brought under the FDCPA during the pendency of a bankruptcy proceeding and such claims brought after discharge, i.e., after the bankruptcy proceeding was over. Id. at *2. During the pendency of a bankruptcy action, a debtor's remedy lies in the bankruptcy court; however, once the bankruptcy proceedings are concluded, a debtor may seek redress through other causes of action. Other courts have applied the same distinction. Compare Hernandez v. Dyck-O'Neal, Inc., No. 3:14-cv-1124-J-32JBT, 2015 WL 2094263, at *4 (M.D. Fla. May 5, 2015) (stating, "[t]he Court agrees with the analysis in [Randolph, 368 F.3d at 730] where the Seventh Circuit reasoned that the 'operational differences' between the FDCPA and the Bankruptcy Code do not 'add up to irreconcilable conflict'" in a case involving post-discharge conduct), with Townsend v. Quantum3 Grp., LLC, 535 B.R. 415, 430 (M.D. Fla 2015) (finding irreconcilable conflict between the FDCPA and the Bankruptcy Code in a case where the

complained of conduct occurred during the pendency of a bankruptcy action).

Furthermore, Bayview's citation of Lovegrove v. Ocwen Loan Servicing, LLC, No. 7:14cv00329, 2015 WL 5042913, at *7-8 (W.D. Va. Aug. 26, 2015), which noted the functional differences between the Bankruptcy Code and the FDCPA for why the two statutes irreconcilably conflict, does not persuade the Court that repeal by implication is at play. Rather, the Court finds the Seventh Circuit's rational in Randolph, 368 F.3d at 730-31, persuasive. Notably, the Seventh Circuit considered most of the same differences and—contrary to Lovegrove—the court concluded that such differences show merely that the Bankruptcy Code and the FDCPA overlap.

Here, the conduct complained of occurred post-discharge. Thus, as in Garfield and Hernandez, the Court cannot conclude that the Bankruptcy Code impliedly repealed the FDCPA. Although the two statutes provide different remedial schemes, that does not evince a clear intention by Congress to preclude claims under the FDCPA post-discharge any more so than it demonstrates that Congress intended to provide debtors with multiple remedies for disapproved debt-collection practices.

**b.    The FDCPA and TILA**

TILA and Regulation Z generally require creditors to send statements to the obligor for each billing cycle. 15 U.S.C. § 1637; 12 C.F.R. § 1026.41(a). Bayview argues that this requirement under TILA and Regulation Z preclude Leahy-Fernandez from asserting a claim under the FDCPA. (Doc. # 19 at 13-17). The commentary to Regulation Z "clarifies that with respect to any portion of the mortgage debt that is not discharged a servicer must resume sending periodic statements in compliance with § 1026.41 . . . ." 78 Fed. Reg. at 63001. The commentary further states, "[t]he periodic statement is not required for any portion of the mortgage debt that is discharged . . . ." Id. (emphasis added).

As alleged in the Complaint, Leahy-Fernandez received a discharge of the entirety of the mortgage debt such that she is no longer personally liable for the Debt. (Doc. # 1 at ¶¶ 35-36). Thus, TILA and Regulation Z did not compel Bayview to send a monthly statement. Consequently, TILA does not preclude the instant FDCPA action by Leahy-Fernandez.

## 2.   The FCCPA and Federal Statutes

Bayview further argues that the FCCPA is preempted by the Bankruptcy Code and TILA. There are "three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption." Cliff v. Payco Gen. Am. Credits,

Inc., 363 F.3d 1113, 1122 (11th Cir. 2004) (citations

omitted). The Cliff court explained the nature of each type:

> "Express preemption" occurs when Congress has
> manifested its intent to preempt state law
> explicitly in the language of the statute. If
> Congress does not explicitly preempt state law,
> however, preemption still occurs when federal
> regulation in a legislative field is so pervasive
> that we can reasonably infer that Congress left no
> room for the states to supplement it—this is known
> as "field preemption" or "occupying the field."
> English v. General Elec. Co., 496 U.S. 72, 79, 110
> S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). And even
> if Congress has neither expressly preempted state
> law nor occupied the field, state law is preempted
> when it actually conflicts with federal law.
> "Conflict preemption," as it is commonly known,
> arises in two circumstances: when it is impossible
> to comply with both federal and state law and when
> state law stands as an obstacle to achieving the
> objectives of the federal law. Crosby v. Nat'l
> Foreign Trade Council, 530 U.S. 363, 372–73, 120
> S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000).

Id. at 1122. "[T]he purpose of Congress is the ultimate

touchstone of preemption analysis." Id. (internal quotation

marks omitted) (citation omitted).

The Court notes "a high threshold must be met if a state

law is to be preempted for conflicting with the purposes of

a federal act." Graham v. R.J. Reynolds Tobacco Co., 782 F.3d

1261, 1275 (11th Cir. 2015) (quoting Chamber of Commerce v.

Whiting, 131 S.Ct. 1968, 1985 (2011)). In addition, Bayview

must overcome the general "presumption against preemption—

namely, that [a court] start[s] with the assumption that the

historic police powers of the States were not to be superseded by federal law unless that was the clear and manifest purpose of Congress." Id. (citation and internal quotation marks omitted) (original alterations omitted).

### a.   The FCCPA and the Bankruptcy Code

Bayview's supposition ultimately rests on Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 426 (6th Cir. 2000), and Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 448 (1st Cir. 2000). (Doc. # 19 at 12).   However, both Pertuso and Bessette dealt with activities that occurred during the respective bankruptcy proceedings. Likewise, Prindle v. Carrington Mortgage Services, LLC, No. 3:13-cv-1349-J-34PDB, Doc. # 99, at *17-19 (M.D. Fla. Oct. 23, 2015) (unpublished), is also distinguishable. There, the discharged debtor remained in the house, which was subject to a mortgage the debtor had signed. Thus, the Bankruptcy Code allowed for communications between the creditor and debtor, but the FCCPA barred such communications. Id. at 18-19. Conflict preemption existed in that case between the Bankruptcy Code and the FCCPA because the creditor's rights under the Bankruptcy Code were chilled by the provisions in the FCCPA.

However, here, Leahy-Fernandez alleges she surrendered her house and "actually moved out of the house during the

11

course of her bankruptcy." (Doc. # 1 at ¶ 36). At the motion to dismiss stage, the Court must accept this allegation as true. Therefore, <u>Prindle</u> is distinguishable, because Leahy-Fernandez surrendered the house subject to the mortgage, and the Court finds the analysis in <u>Hernandez</u>, 2015 WL 2094263, at *4-5, persuasive.

The <u>Hernandez</u> court found the FCCPA was not preempted when the complained of conduct occurred post-discharge. <u>Id.</u> As noted in <u>Hernandez</u>, "if a debt collector has violated both the FCCPA and the Bankruptcy Code, a debtor's choice to pursue the remedies provided under the FCCPA does not stand as an obstacle to the objectives of the Bankruptcy Code," <u>Id.</u>, when the conduct occurs after the bankruptcy proceeding terminates. In sum, the Court finds that Bayview failed to carry its burden and there is no preemption.

### b.   <u>The FCCPA and TILA</u>

Bayview argues that TILA preempted the FCCPA. Bayview's argument, however, is unpersuasive. The commentary to Regulation Z "clarifies that with respect to any portion of the mortgage debt that is not discharged a servicer must resume sending periodic statements in compliance with § 1026.41 . . . ." 78 Fed. Reg. 205, 63001. But, the commentary further states, "[t]he periodic statement is <u>not</u> required for

any portion of the mortgage debt that is discharged . . . ."
Id. (emphasis added).

As alleged in the Complaint, Leahy-Fernandez received a discharge of the entirety of the mortgage debt such that she is no longer personally liable for the debt. (Doc. # 1 at ¶¶ 35-36). Thus, TILA and Regulation Z did not compel Bayview to send a monthly statement. And because Regulation Z did not compel Bayview to send a monthly statement, Bayview was able to comply with both Regulation Z and the FCCPA. Consequently, Bayview has failed to carry its burden of overcoming the presumption against preemption. See Kelliher v. Target Nat. Bank, 826 F. Supp. 2d 1324, 1329 (M.D. Fla. 2011) (holding that TILA did not preempt the FCCPA where defendant-creditor was able to comply with both statutes).

**B.    Failure to State a Claim**

Bayview raises four points as to how Leahy-Fernandez failed to state a claim for relief; namely, (1) there was no attempt to collect a debt, (2) Bayview was not on notice that Leahy-Fernandez was represented with respect to the Debt, (3) Leahy-Fernandez's claims under Section 1692d of the FDCPA and Section 559.72(7) of the FCCPA fail as a matter of law, and (4) the Debt is not illegitimate. The Court addresses each in turn.

### 1.   __Attempt to Collect__

Bayview argues the attached communications do not constitute an attempt to collect a debt. There is not "a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." Parker v. Midland Credit Mgmt., Inc., 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012). However, the Eleventh Circuit applies the least-sophisticated-debtor standard in determining whether a communication was an attempt to collect a debt. Id.

The Eleventh Circuit has also noted that "courts should look to the language of the letters in questions, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered . . . ." Pinson v. Albertelli Law Partners LLC, 618 Fed. Appx. 551, 553 (11th Cir. 2015). In addition, "[a] demand for payment need not be express." Id. An "implicit demand for payment [may exist] where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting debt." Id.

The Court notes as a preliminary matter that the FDCPA contains a one-year statute of limitations. 15 U.S.C. §

1692k(d). Here, the Complaint was filed on October 8, 2015. (Doc. # 1). Thus, any communication sent before October 8, 2014, is time-barred under the FDCPA. (Doc. # 1-2 at 25-44) (communications not time-barred by the FDCPA).

Upon review of the mortgage statements attached to the Complaint, the Court determines such communications constituted an attempt to collect a debt. Every mortgage statement (1) lists a total amount due, (2) provides a payment coupon that includes the address to which payment should be sent and the amount due, (3) discusses additional payment options, and (4) provides that a fee will be charged if payment is not received by a certain date. (Id. at 6-7, 10-18, 21-22, 25-44). Although some of the mortgage statements contain a one-sentence disclaimer in fine-print on the second page (Id. at 29-44), such a disclaimer is insufficient to shield Bayview as a matter of law from liability at this stage of the litigation. LaPointe v. Bank of Am., N.A., No. 8:15-cv-1402-T-26EAJ, at *4 (M.D. Fla. Aug. 26, 2015) (unpublished); cf. Helman v. Udren Law Offices, P.C., 85 F. Supp. 3d 1319 (S.D. Fla. 2014) (Docket entry 97-2 shows the disclaimer is prominently displayed above payment coupon rather than hidden among boiler-plate language). Therefore, Bayview's Motion is denied to the extent it seeks dismissal

of Leahy-Fernandez's FDCPA and FCCPA claims on the ground that there was no attempt to collect a debt by sending the mortgage statements.

As to the three letters that are not mortgage statements, which are included in Exhibit B (Doc. # 1-2 at 8-9, 18-20, 23-24), because they were all sent more than a year before the filing of the instant Complaint, they are time-barred under the FDCPA. But, with respect to the FCCPA, unlike the mortgage statements, the Court cannot say the three letters in Exhibit B were attempts to collect a debt. The three letters do not provide a payment coupon, that a fee will be charged if payment is not received by a certain date, or explicitly demand payment as the mortgage statements did. Therefore, Bayview's Motion is granted to the extent it seeks dismissal of Leahy-Fernandez's FDCPA and FCCPA claims insofar as they are based on the three letters.

### 2.   **Notice of Representation**

Bayview argues that Leahy-Fernandez's claims under both the FDCPA and FCCPA fail to state claim because Bayview was not on notice that Leahy-Fernandez was represented with respect to the Debt. (Doc. # 19 at 22-23). However, the Complaint alleges that Leahy-Fernandez's bankruptcy counsel contacted Bayview specifically as to the Debt. (Doc. # 1 at

¶¶ 39-40, 48). In addition, the letters attached to the Complaint as Exhibits A and C support the conclusion that Leahy-Fernandez has alleged sufficient facts to survive the Motion. (Doc. # 1-2 at 1, 27).

### 3.  **Claims for Harassment**

Bayview argues that Leahy-Fernandez's claims under Section 1629d of the FDCPA and Section 559.72(7) of the FCCPA fail as a matter of law. The Court agrees.

Section 1629d reads, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt." And Section 559.72(7) reads, "no person shall . . . willfully communicate with the debtor . . . with such frequency as can reasonably be expected to harass the debtor . . . . or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor . . . ."

In the Eleventh Circuit, "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes [her] relatively more susceptible to harassment, oppression, or abuse." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985). The court in Valle v. National Recovery Agency, No. 8:10-cv-2775-T-23MAP, 2012 WL 1831156,

at * 1 (M.D. Fla. May 18, 2012), listed several factors used

to assess whether a violation of Section 1692d occurred.

> Factors often examined in assessing a claimed
> violation of Section 1692d and Section 1692d(5)
> include (1) the volume and frequency of attempts to
> contact the debtor, (2) the volume and frequency of
> contacts with the debtor, (3) the duration of the
> debt collector's attempted communication and
> collection, (4) the debt collector's use of abusive
> language, (5) the medium of the debt collector's
> communication, (6) the debtor's disputing the debt
> or the amount due, (7) the debtor's demanding a
> cessation of the communication, (8) the debt
> collector's leaving a message, (9) the debt
> collector's calling at an unreasonable hour, (10)
> the debt collector's calling the debtor at work,
> (11) the debt collector's threatening the debtor,
> (12) the debt collector's lying to the debtor, (13)
> the debt collector's impersonating an attorney or
> a public official, (14) the debt collector's
> contacting a friend, co-worker, employee, employer,
> or family member, and (15) the debt collector's
> simulating or threatening legal process.

Id.

    Leaving aside the factors that do not address mailings,

the Court determines the communications by Bayview were not

violative of either Section 1629d of the FDCPA or Section

559.72(7) of the FCCPA. See Jeter, 760 F.2d at 1179 (stating,

"Congress has indicated its desire for the courts to structure

the confines of § 1692d") (citation omitted); Trent v. Mortg.

Elec. Registration Sys., Inc., 618 F. Supp. 2d 1356, 1361

(M.D. Fla. 2007) (stating, "when applying the provisions of

the FCCPA, 'great weight shall be given to the interpretations

of . . . the federal courts relating to the federal Fair Debt Collection Practices Act'" (quoting Fla. Stat. § 559.77(5) (2010))).

Here, Bayview's communications consisted of one piece of mail once a month, except for May of 2014, when two pieces of mail were sent. (Doc. # 1-2 at 6-26, 29-44). Although the sixth and seventh factors weigh in Leahy-Fernandez's favor, Bayview used a minimally intrusive means of communication, Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1466 (C.D. Cal. 1991), did not use abusive language, did not threaten Leahy-Fernandez, and did not contact Leahy-Fernandez's friends, co-workers, or family members. As such, Bayview's Motion is granted to the extent it seeks dismissal of Leahy-Fernandez's claims under Section 1629d of the FDCPA and Section 559.72(7) of the FCCPA.

### 4.   Illegitimate Debt

Bayview argues "there is no basis to claim the [D]ebt is not 'legitimate' under § 559.72(9)." (Doc. # 19 at 24-25). Section 559.72(9) states a debt collector may not "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right

does not exist." Bayview, however, provides no case law in support.

In contrast, Leahy-Fernandez cites to <u>Eider v. Colltech, Inc.</u>, for the proposition that under the FDCPA "[s]ending a collection letter indicating that a certain debt is due and payable when the debt has actually been discharged in bankruptcy constitutes a false representation about the legal status of the debt . . . ." 987 F. Supp. 2d 951, 962-63 (D. Minn. 2013) (citing <u>Randolph</u>, 368 F.3d at 728)). The Court finds <u>Eider</u> instructive, although not directly on point, because "when applying the provisions of the FCCPA, great weight shall be given to the interpretations of . . . the federal courts relating" to the FDCPA. <u>Trent</u>, 618 F. Supp. 2d at 1361 (internal quotation marks omitted). It follows from <u>Eider</u> that although the mortgage lien survived the discharge, the debt as against Leahy-Fernandez personally is no longer legitimate and, thus, attempts to collect from her personally violate Section 559.72(9).

**C.   <u>Count III: Violations of the Discharge Injunction</u>**

Count III seeks relief under 11 U.S.C. § 105(a) for alleged violations of the discharge injunction arising from Leahy-Fernandez's underlying bankruptcy. Chapter 13 of the Bankruptcy Code provides in part, "as soon as practicable

after completion by the debtor of all payments under the plan

. . . the court shall grant the debtor a discharge of all

debts provided for by the plan." 11 U.S.C. § 1328(a). The

discharge "operates as an injunction against the commencement

or continuation of an action, the employment of process, or

an act, to collect, recover or offset any such debt as a

personal liability of the debtor . . . ." Id. at § 524.

Furthermore, Section 105(a) states:

> The court may issue any order, process, or judgment
> that is necessary or appropriate to carry out the
> provisions of this title. No provision of this
> title providing for the raising of an issue by a
> party in interest shall be construed to preclude
> the court from, sua sponte, taking any action or
> making any determination necessary or appropriate
> to enforce or implement court orders or rules, or
> to prevent an abuse of process.

Id. at § 105(a). Bayview argues Section 105 does not authorize

a separate cause of action in this Court (Doc. # 19 at 4-5),

whereas Leahy-Fernandez argues she may rely on Section 105 in

this Court to remedy the alleged breach of the discharge

injunction (Doc. # 29 at 5-8).

The Eleventh Circuit has not addressed whether a debtor

who received a discharge in bankruptcy may seek redress for

alleged violations of a discharge injunction through Section

105 in an independent action filed in district court.

Furthermore, there is conflict among the Circuits that have

addressed the issue. The weight of authority, however, holds that a debtor may not seek to remedy an alleged violation of a discharge injunction through Section 105 outside the context of a contempt proceeding in bankruptcy. In re Joubert, 411 F.3d 452, 455-57 (3d Cir. 2005) (agreeing that Section 105 does not authorize private causes of action to remedy bankruptcy discharge violations); Walls, 276 F.3d at 506 (stating, "violations of [§ 524] may not independently be remedied through § 105 absent contempt proceeding in the bankruptcy court"); Cox v. Zale Del., Inc., 239 F.3d 910, 916 (7th Cir. 2001) (noting in dicta that debtor could move to hold creditor in contempt of discharge order); Pertuso, 233 F.3d at 423 n.1 (rejecting argument that Section 105(a) may be asserted outside of contempt proceeding in bankruptcy court).

In contrast, only one Circuit has allowed a debtor to seek redress under Section 105 for alleged violations of a discharge injunction. Bessette, 230 F.3d at 446.

Upon review of the authorities, the Court holds that a debtor who has received a discharge in bankruptcy may not seek redress for a putative violation of a discharge injunction through an independent action rather than instituting contempt proceedings in the bankruptcy court. "It

is settled that 'the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order,' and this 'power to sanction contempt is jurisdictional.'" In re McLean, 794 F.3d 1313, 1318-19 (11th Cir. 2015) (quoting Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 970 (11th Cir.2012); citing Cox, 239 F.3d at 917 (stating "[a]ffirmative relief can be sought only in the bankruptcy court that issued the discharge.")).

"The violation of an injunction is a contempt against an entire court insofar as it flouts the court's basic authority to preserve order and administer justice. Accordingly, any court—bankruptcy court included—has inherent powers to punish contempt against it, as a means of protecting itself as an institution." Id. at 1319 (internal citation omitted). Because it was the United States Bankruptcy Court for the Middle District of Florida that entered the discharge in Leahy-Fernandez's bankruptcy proceeding, it is that Court which "'alone possesse[s] the power to enforce compliance with' the discharge injunction." Id. Accordingly, Count III of Leahy-Fernandez's Complaint is dismissed without prejudice. If Leahy-Fernandez believes the discharge injunction has been violated, she may seek redress in the court that issued the discharge, and hence injunction, in the

first place, the United States Bankruptcy Court for the Middle District of Florida.

## IV.  Conclusion

In conclusion, the Court finds that neither the Bankruptcy Code nor TILA impliedly repealed the FDCPA. Likewise, the Court finds that neither the Bankruptcy Code nor TILA preempts the FCCPA. However, Count I is dismissed to the extent it is based on (1) the three letters, which were not mortgage statements, sent to Leahy-Fernandez and (2) Section 559.72(7). Count II is dismissed to the extent it is based on (1) communications made before October 8, 2014, and (2) Section 1692d. Bayview's Motion is otherwise denied, as set forth below. Furthermore, Count III is dismissed as the appropriate court to enforce a putative violation of the discharge injunction is the United States Bankruptcy Court for the Middle District of Florida.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Bayview Loan Servicing, LLC's Motion to Dismiss (Doc. # 19) is **DENIED** to the extent it seeks dismissal based on preemption as to Count I and implied repeal as to Count II.

(2)   Bayview Loan Servicing, LLC's Motion to Dismiss (Doc. #

19) is **GRANTED IN PART AND DENIED IN PART** on the grounds

that Leahy-Fernandez failed to state a claim upon which

relief can be granted. Specifically, the Court rules

Bayview's Motion is:

(a)   **DENIED** to the extent it seeks dismissal of

Counts I and II on the ground that the  mortgage

statements do not constitute an attempt to collect

a debt;

(b)   **GRANTED** to the extent it seeks dismissal of

Count  II  insofar  as  Count  II  is  based  on

communications made before October 8, 2014;

(c)   **GRANTED** to the extent it seeks dismissal of

Count I insofar as Count I is based on the three

letters sent to Leahy-Fernandez;

(d)   **DENIED** to the extent it seeks dismissal of

Counts I and II on the ground that Bayview was not

on notice that Leahy-Fernandez was represented;

(e)   **GRANTED** to the extent it seeks dismissal of

Counts I and II insofar as Counts I and II are based

on  Section  559.72(7)  and  Section  1692d,

respectively; and

(f) **DENIED** to the extent it seeks dismissal of Count I on the ground that the Debt is not illegitimate.

(3) Bayview Loan Servicing, LLC's Motion to Dismiss (Doc. # 19) is **GRANTED** to the extent it seeks dismissal of Count III of the Complaint.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of February, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE